IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

JOSEPH W. WEHNER, JR.             *

               Plaintiff          *

           vs.                    *     CIVIL ACTION NO. MJG-15-2163

BEST BUY STORES, L.P.            *

            Defendant           *

*      *      *      *      *      *      *      *      *

## Memorandum and Order Re: Summary Judgment

The Court has before it Defendant's Motion for Summary Judgment [ECF No. 34], Plaintiff's Cross-Motion for Summary Judgment [ECF No. 35], and the materials submitted relating thereto. The Court has held a hearing and had the benefit of arguments from counsel.

## I.   INTRODUCTION

Plaintiff Joseph Wehner ("Wehner") filed the Complaint [ECF No. 1] asserting claims against his former employer, Defendant Best Buy Stores, L.P. ("Best Buy") and two of its employees. Wehner presented his claims in four counts:

- Count I - violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq. (2012);

- Count II - violation of the Maryland Fair Employment Practices Act ("FEPA"), Md. Code. Ann., State Gov't § 20-601 et seq. (2014 Repl. Vol.)(disability discrimination);

- Count III - violation of FEPA (age discrimination); and

- Count IV - violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 et seq. (2012).

Wehner dropped his claims against the individual defendants when he filed the Amended Complaint [ECF No. 20] and has agreed that Best Buy is entitled to summary judgment on his age discrimination claims presented in Counts 3 and 4 of the Amended Complaint.[1]

By the instant cross-motions, each side seeks summary judgment.


II.   <u>SUMMARY JUDGEMENT STANDARD</u>

Summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also <u>Desper Prods., Inc. v. Qsound Labs, Inc.</u>, 157 F.3d 1325, 1332 (Fed. Cir. 1998).  The Court, viewing the evidence in favor of the non-moving party, must determine whether a reasonable fact finder could find for the non-movant or whether the movant would be entitled to judgment as a matter of law.  See <u>Anderson v. Liberty Lobby, Inc.</u>, 477

---

[1]    Wehner states that he "does not oppose Best Buy's Motion for Summary Judgment with respect to his age discrimination claims under the AD[E]A and MFEPA." Pl.'s Mem. [ECF No. 35-1] at 2 n.2.

U.S. 242, 248 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986).

Cross motions for summary judgment "do not automatically empower the court to dispense with the determination whether questions of material fact exist." Lac Courte Oreilles Band of Lake Superior Chippewa Indians v. Voigt, 700 F.2d 341, 349 (7th Cir. 1983). "Rather, the court must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration." Mingus Constructors, Inc. v. United States, 812 F.2d 1387, 1391 (Fed. Cir. 1987). The Court may grant summary judgment in favor of one party, deny both motions, or grant in part and deny in part each of the parties' motions. See Rossignol v. Voorhaar, 316 F.3d 516, 523 (4th Cir. 2003).

III.   DISCUSSION

A. Factual Background[2]

On or about August 6, 2008, Best Buy hired Wehner as a District Business Manager. Wehner was fifty years old at the time he began his employment with Best Buy, possessed a high school degree, and had more than thirty years of retail managerial experience.

---

[2]   The parties disagree as to many material facts.

In late 2008, Wehner was appointed interim General Manager ("GM") of a Best Buy store in Bel Air, Maryland.  In 2009, Wehner applied for, and received, the position of GM of a new Best Buy store in Hunt Valley, Maryland.  Later, Wehner was promoted[3] to be GM at the Best Buy store in Bel Air, which was larger.

In November of 2012, Wehner contracted a tick-borne illness and took a leave of absence pursuant to the Family Medical Leave Act, 29 U.S.C. § 2601 et seq.  Wehner's leave was extended, with Best Buy's approval, until November 9, 2013, at Wehner's request.  After Wehner extended his leave, Best Buy found someone to permanently replace him as GM of the Bel Air store.

During his recovery, Wehner suffered from migraines, soreness, fatigue, and loss of concentration. [ECF No. 35-13] at 7-8.  Dr. James S. Langan, a Clinical Neuropsychologist, evaluated Wehner in April 2013 and concluded that, although Wehner was "slowly recovering from his illess,"

> [I]n my view [Wehner's] current cognitive abilities would prevent him from being successful in executing his multiple responsibilities quickly and efficiently. My concern is that he will develop increasing stress-related symptoms as he struggles to keep up with work demands. . . .
>
> For his future, I would recommend that he not return to his former position.  A position of lesser

---

[3]   Wehner did not have to interview or apply for this position.

> responsibility may be possible where he is able to
> draw upon his accumulated wisdom about the retail
> industry . . . . Being a store manager "on the front
> lines" is not possible at the present time given his
> present cognitive limitations.

Langan Rep. [ECF No. 34-7] at 6.

Wehner updated the new supervising District Manager Johnny

Arias ("Arias") and District Human Resources Manager Cheryl

Holland ("Holland") on his medical condition, symptoms, and

recovery progress.  [ECF No. 35-13] at 7-8.  Wehner also worked

with Best Buy Human Resources caseworkers and The Hartford to

determine his leave and anticipated return date.  Id.

On September 25, 2013, Wehner called Holland and left her a

voicemail about returning to work.  Holland did not return

Wehner's call.

On September 30, 2013, Wehner saw his primary care

physician, Dr. John Mulvey.[4]  According to Dr. Mulvey's notes

from that visit,

> [Wehner has] been able to concentrate better . . .
> [and] is finally getting confidence back. He does not
> feel that he can return to [the GM] position of long
> hours . . . corporate duties in which he has a 40 hour
> week and a more manageable schedule to avoid multiple
> distracting demands  . . . is something he could do.

Mulvey Notes [ECF No. 35-10].

_____

[4]   It is disputed whether Wehner was cleared to return to work
by Dr. Mulvey.  See Def.'s Mem. [ECF No. 34-1] at 2 n.3.

On or about October 4, Holland emailed Wehner's caseworker from the Best Buy HR Support Center.  Holland wrote, "I have recently tried to reach out to Joseph Wehner.  He didn't respond. He is expected to return to work in the first week of November. What are the next steps to secure his return or facilitate his termination?"  [ECF No. 35-12] at 2.  The caseworker replied that he had told Arias that Wehner was approved for leave until November.  Holland responded, "I just want you to reach out to Joe [Wehner] to start the process of returning him to work or terminating his employment if possible." Id.

Wehner called Holland on October 7, 2013, to discuss returning to work, but did not talk to her. On October 16, 2013, Wehner sent an email to Holland and Arias to "touch base with each of [them] in regards to returning to work with Best Buy." [ECF No. 35-13].  Holland replied to this email on October 17 and explained she was out of town for work and asked to meet with Wehner the following week.  Id.  Arias stated that he and Holland originally thought that Wehner would return to a vacant GM position or a similar position.  See Arias Dep. [ECF No. 34-4] at 203:19-204:13.

On October 21, 2013, Wehner scheduled a phone call with Holland and Arias for October 22, 2013, in lieu of a meeting. Before the call, Wehner faxed Holland an excerpt of Dr. Langan's

medical report from April 2013 — the only medical documentation that Holland had seen so far.

Also prior to the phone call with Wehner, Holland spoke with Arias, a Best Buy attorney, the regional manager, and the Territory Human Resources Director, Courtney Capeling, to discuss potential positions to offer Wehner. Holland Dep. [ECF No. 34-5] at 81-86.

During the October 22 phone call, Wehner said he could not return to work as a GM.  Holland and Arias offered Wehner an Assistant Manager position, a mobile supervisor position and, possibly, a General Manager In Training[5] ("GMIT") position. Wehner rejected these offers because, he says, he believed that he would be medically unable to perform these jobs because they were similar to the GM position he once held.  Wehner Dep. [ECF No. 34-2] at 86:16-19, 89:2-10, 98:8-22.

---

[5]     There is conflicting testimony regarding whether Best Buy offered Wehner a GMIT Position. Wehner testified that he discussed the GMIT position with Holland and Arias and that he was interested in it, but the position was never offered and Mr. Arias said it no longer existed. See Wehner Aff. [ECF No. 39-1] ¶ 2. Conversely, Holland testified that the GMIT position was in fact offered to Wehner, but Wehner rejected it. See Holland Dep. [ECF No. 34-5] at 84-85. Courtney Capeling said that Best Buy was willing to create the position for Wehner but she was unaware of whether it was actually offered.  See Capeling Dep. [ECF No. 34-6] at 18:9-19:3.  Arias did not mention in his deposition that the GMIT position was offered. See Arias Dep. [ECF No. 34-4] at 207:11-22.

During the October 22 phone call, Wehner stated he was interested in three positions he had seen on the Best Buy website: a Delivery Distribution Center Supervisor ("DDC") position, a District Services Manager ("DSM") position in District 95, and a Deputy Field Marshal[6] ("DFM") position. Wehner submitted a formal application only to the DDC position. Ultimately, Best Buy did not offer Wehner any of these positions.

Holland did not offer the DSM position to Wehner because it was in a different district and "not under [her] supervision," and she and Arias "weren't the people who would decide who got those jobs."  Holland Dep. [ECF No. 34-5] at 88:21, 91:14-17. Wehner was told that he had to apply online, which he did not do.

The DDC position was located in District 25, but Holland was not in charge of hiring for that position.  Holland called the HR manager involved and learned that Wehner could not be considered for the DDC position because he did not possess the required Associate's degree.

Holland contacted the DFM position supervisor to inquire into the availability of the position because no openings were listed on the website.  The DFM supervisor told her there were

---

[6]    A Deputy Field Marshal position is commonly known as the Best Buy "Geek Squad."

no DFM positions available.  On October 24, 2013, Holland sent
Arias an email informing him that no DFM positions were
available and that for the DDC position "a two year degree is
REQUIRED and a four year degree is preferred!!!!"  [ECF No. 35-
14].

Holland took no further action to locate other vacant
positions in the Mid-Atlantic region.  Altogether, Holland had
about three to four verbal conversations with Wehner during the
relevant time period. Holland Dep. [ECF No. 34-5] at 155:18-
156:1.  Holland and Arias called Wehner on November 1, 2013, to
inform him that they could not find him an alternative position,
and Wehner was notified by email several days later that he
would soon be terminated.  Best Buy terminated Wehner on
November 13, 2013.

   B. Disability Discrimination Claims (Counts I - II)

Wehner asserts "failure to accommodate" claims under the
ADA and FEPA.

The ADA prohibits employers from "discriminat[ing] against
a qualified individual on the basis of disability in regard to
job application procedures, the hiring, advancement, or
discharge of employees, . . . ." 42 U.S.C. § 12112(a)(2012).

FEPA prohibits essentially the same conduct.[7]  Unlawful discrimination includes "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability . . . unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity."  42 U.S.C. § 12112(b)(5)(A)(2012).

The instant case proceeds pursuant to a burden of proof shifting procedure whereby:

- Plaintiff must present a prima facie case that there was a failure to make a reasonable accommodation.

- If he does, the burden shifts to the Defendant to prove that a reasonable accommodation would have caused undue hardship.

Halpern v. Wake Forest Univ. Health Scis., 669 F.3d 454, 464 (4th Cir. 2012).

### 1. Prima Facie Case of Discrimination

To establish a prima facie case that there was a failure to make a reasonable accommodation, a plaintiff must prove:

---

[7]   "An employer may not: (1) fail or refuse to hire, discharge, or otherwise discriminate against any individual with respect to the individual's compensation, terms, conditions, or privileges of employment because of: (i) the individual's . . . disability unrelated in nature and extent so as to reasonably preclude the performance of the employment." Md. Code Ann., State Gov't § 20-606(a) (2014 Repl. Vol.).

(1) that he was an individual who had a disability
    within the meaning of the statute;

(2) that the [employer] had notice of his disability;

(3) that with reasonable accommodation[8] he could
    perform the essential functions of the position; and

(4) that the [employer] refused to make such
    accommodations.

Wilson v. Dollar Gen. Corp., 717 F.3d 337, 344 (4th Cir. 2013);

see also Peninsula Reg'l Med. Ctr. v. Adkins, 137 A.3d 211, 213

(Md. 2016) (listing same elements under FEPA).

It does not appear that Best Buy disputes the first two

elements, i.e., that Wehner had a disability and that Best Buy

was on notice of his need for an accommodation.[9]  However, the

latter two elements are at issue.


2. Was there a Reasonable Accommodation?

Under the ADA, a "reasonable accommodation" may include

"job restructuring, part-time or modified work schedules,

reassignment to a vacant position, . . . [or] appropriate

adjustment or modifications of . . . policies."  42 U.S.C.

§ 12111.  The FEPA's definition of "reasonable accommodation" is

---

[8]    "[A]t the summary judgment stage, the employee 'need only
show that an "accommodation" seems reasonable on its face,' and
then the employer 'must show special (typically case-specific)
circumstances that demonstrate undue hardship.'" Reyazuddin v.
Montgomery Cty., Maryland, 789 F.3d 407, 414 (4th Cir. 2015)
(quoting U. S. Airways v. Barnett, 535 U.S. 391, 401-02 (2002)).
[9]    See [ECF No. 34-1] at 2; [ECF No. 35-1] at 5-6.

almost identical, and includes "[r]eanalyzing . . . job specifications, qualifications, or criteria to determine if they may be waived or modified."  Md. Code Regs. 14.03.02.05(B).

The ADA scheme imposes upon employees and employers a good-faith duty "to engage [with their employees] in an interactive process to identify a reasonable accommodation" once an employee communicates his disability and a desire for accommodation. Jacobs v. N.C. Admin. Office of the Courts, 780 F.3d 562, 581 (4th Cir. 2015)(citing Wilson, 717 F.3d at 346); Smith v. Midland Brake, Inc., a Div. of Echlin, Inc., 180 F.3d 1154, 1172 (10th Cir. 1999) ("[B]oth parties have an obligation to proceed in a reasonably interactive manner to determine whether the employee would be qualified, with or without reasonable accommodations, for another job within the company and, if so, to identify an appropriate reassignment opportunity if any is reasonably available.").

Wehner contends that a reasonable accommodation in this case would have been reassignment to the DDC, DSM, or other (unspecified) potentially vacant positions.  Best Buy denies that Wehner could perform the essential functions of these positions.  Best Buy contends that it fulfilled its obligation to make a reasonable accommodation by offering Wehner at least three other positions with duties that he could have performed.

a. The Offered Positions[10]

Wehner bears the burden of proving that Best Buy's job offers were not reasonable accommodations.  See Adkins, 137 A.3d at 235.  An employer is "not obligated to provide the accommodation requested or preferred by the employee; the reassignment need only be a 'reasonable accommodation." Cravens v. Blue Cross & Blue Shield of Kansas City, 214 F.3d 1011, 1019 (8th Cir. 2000)(citing 42 U.S.C. §§ 12111(9), 12112(b)(5)(A)).

When Wehner told Holland and Arias that he could not be successful in a GM position, Holland and Arias accepted his explanation and offered Wehner alternative positions: an Assistant Manager position, an in-store mobile supervisor position, and, possibly, a GMIT position.[11]  Wehner turned down the positions offered to him.

Best Buy argues that Wehner's rejection of these offers constituted a failure on his part to engage in the interactive process and to accept a reasonable accommodation.  See 29 C.F.R. § 1630.9(d)(2011)("An individual with a disability is not

---

[10]    Assistant Manager, Mobile Supervisor, and GMIT Positions
[11]    The parties dispute whether the GMIT position was ever offered and whether Wehner would have accepted it, making this a jury issue.  Compare [ECF No. 39] at ¶ 2(stating Wehner was never offered the position of GMIT), with Wehner Dep. [ECF No. 34-2] at 100:19-22 (stating he discussed the GMIT position with Holland and Arias); Holland Dep. [ECF No. 34-5] at 84-85 (stating that she formally offered the GMIT position to Wehner).

required to accept an accommodation . . . . However, if such individual rejects a reasonable accommodation . . . the individual will not be considered qualified."). If, in fact, the positions offered to Wehner were reasonable accommodations, then Best Buy fulfilled its legal obligation and Wehner has failed to prove a prima facie case.

To avoid summary judgment, Wehner must show that these offered positions were not reasonable accommodations in that he could not perform them even with an accommodation and/or that they were ineffective, meaning they did not address his disability-related difficulties. See Fleetwood v. Harford Sys. Inc., 380 F.Supp.2d 688, 699 (D. Md. 2005)("[T]he accommodation must be effective (i.e., it must address the job-related difficulties presented by the employee's disability).").

As noted, there is an issue as to whether Best Buy in fact offered Wehner a GMIT position. And, there are factual issues regarding whether Wehner could perform the essential functions of the positions that were offered.

Wehner stated in his deposition that, in October 2013, he did not feel capable of performing the essential functions of the Assistant Manager or Mobile Supervisor positions, and it "wasn't advised by [his] doctor." Wehner Dep. [ECF No. 34-2] at 89:12. Wehner stated that

14

> those positions are extremely active and engaging. A
> considerable amount of multitasking, and making
> decisions in the moment that have impacts to the
> business.  And during the Christmas season when we're
> extremely busy, when I was returning to work during
> that period it was considered to be too much of a
> challenge to be able to multitask and be productive in
> that capacity, or any of those capacities, due to the
> nature of the engagement with customers and employees
> and the day-to-day business operations in the store.

Id. at 98:14-99:1.  According to Wehner, the DDC and DFM

positions he wanted did not involve those multitasking aspects

to the same "degree," so he felt he could perform the DDC and

DFM positions.  Id. at 99:6  Wehner offers Dr. Langan's April

2013 report as evidence of why he could not return as GM, an

assistant manager, or mobile supervisor.  The report stated:

> For his future, I would recommend that he not return
> to his former position.  A position of lesser
> responsibility may be possible . . . . Being a store
> manager "on the front lines" is not possible at the
> present time given his present cognitive limitations.

Langan Rep. [ECF No. 34-7] at 6.

However, when Wehner visited Dr. Mulvey on September 30, he

was showing improvement.  Mulvey Notes [ECF No. 34-3] at 5 ("He

has been able to concentrate better; reading newspaper; starting

to multitask and is finally getting confidence back.").  Wehner

acknowledged that he had improved "significantly" from April to

October 2013, his migraines had gone away by November 9, 2013,

and he expected to continue improving.  See Wehner Dep. [ECF No.

34-2] at 54-55:7, 99:17-22.  But, as he reported to Dr. Mulvey

in September, "he d[id] not feel he c[ould] return to General Manager position of long hours, and constant issues and distractions coming at him from multiple directions."  Mulvey Notes [ECF No. 34-3] at 5.

Based on this evidence, Best Buy characterizes Wehner's limitations as self-imposed rather than based on direct medical instructions[12] and contends that "[t]he three in-store positions (i.e., the Assistant Manager, in-store supervisor, and GMIT positions) that Best Buy offered involved less pressure and responsibility, and thus were suitable positions to which Mr. Wehner could have returned in accordance with Dr. Langan's recommendation."  Def.'s Reply [ECF No. 36] at 15.

Best Buy offers Wehner's deposition testimony as proof that he was capable of performing those positions:

> Q Okay. But you still regarded yourself incapable of performing to a level that the general manager, assistant manager or supervisor in-store positions were appropriate?
>
> A I wouldn't say incapable. I would say challenging, and it would be an opportunity to be productive.

Wehner Dep. at 100:1-6.  According to Arias, Wehner rejected the supervisor position because it was "too low for him, as he stated."  Arias Dep. [ECF No. 34-4] at 55.  The dispute over this

---

[12]   "The only evidence is that Mr. Wehner questioned his ability to perform at a successful level." Def.'s Mem. [ECF No 34-1] at 11.

issue is complicated by the fact that Wehner's particular limitations were not clearly defined or explained.

Wehner's testimony is contradictory, and it is not clear that he was incapable of performing the essential duties of the offered positions with some other kind of accommodation, such as a modified schedule until he was fully recovered.  Best Buy could have done more to consider modifying the offered positions and to understand Wehner's limitations, but the record also shows that Wehner effectively ended discussion of those positions.  See Arias Dep. [ECF No. 34-4] at 208:3-8 ("I want to give him the exact same job he had. And if he didn't want that, I offered a position lower. . . . And it didn't feel like he was interested in - - in any of them.").

Both parties are responsible for carrying out the interactive process/individualized assessment, and neither can take advantage of the other's failure to interact while simultaneously also failing to engage in the process.  Cf. E.E.O.C. v. Kohl's Dep. Stores, Inc., 774 F.3d 127, 132 (1st Cir. 2014)("If an employer engages in the interactive process with the employee in good faith, for the purpose of discussing alternative reasonable accommodations, but the employee fails to cooperate in the process, then the employer cannot be held liable under the ADA for failure to provide reasonable accommodations.")

The Court finds that, on the current record, there are genuine issues of material fact regarding Best Buy's offering Wehner a reasonable accommodation.  Thus, neither side is entitled to summary judgment.  See Reyazuddin, 789 F.3d at 416.

### b. Interactive Process and Individualized Assessment

According to the EEOC, employers should take the following steps in an interactive process:

(1) Analyze the particular job involved and determine its purpose and essential functions;

(2) Consult with the individual with a disability to ascertain the precise job-related limitations imposed by the individual's disability and how those limitations could be overcome with a reasonable accommodation;

(3) In consultation with the [employee], identify potential accommodations and assess the effectiveness each would have in enabling the individual to perform the essential functions of the position; and

(4) Consider the preference of the [employee] and select and implement the accommodation that is most appropriate for both the employee and employer.

Bryant v. Better Business Bureau, 923 F. Supp. 720, 737 (D. Md. 1996)(citing 29 C.F.R. § 1630.9).  Although failing to engage in an interactive process is not a per se violation of the ADA, it is evidence that the employer may be acting in bad faith and may preclude awarding summary judgment in favor of the employer.

See Cravens, 214 F.3d at 1021 (finding a genuine dispute of fact as to whether employer engaged in the interactive process in good faith); Taylor v. Phoenixville Sch. Dist., 184 F.3d 296, 318 (3d Cir. 1999)("[W]here there is a genuine dispute about whether the employer acted in good faith, summary judgment [for the employer] will typically be precluded."); Hendricks-Robinson v. Excel Corp., 154 F.3d 685, 700 (7th Cir. 1998)(denying summary judgment to an employer because it may not have pursued the interactive process in good faith).

Similarly, Maryland law requires employers to make an individualized assessment of an employee's "ability to perform the essential functions of a job."  Md. Code Regs. 14.03.02.04(B)(3).  The "individualized assessment" requirement "provides stronger protection for the employee than the federal 'interactive process' regulation because [section 14.03.02.04(B)] explicitly provides that failure to conduct an individualized assessment constitutes an unlawful employment practice."  Adkins v. Peninsula Regional Med. Center, 119 A.3d 146, 164 (Md. App. 2015).

There are genuine issues of material fact regarding whether Best Buy engaged in the requisite interactive process and

individualized assessment.[13]  Even if Best Buy did fail to do so,
Wehner would have to identify an appropriate[14] vacant position
into which he could have been transferred.   See Jacobs v. N.C.
Admin. Office of the Courts, 780 F.3d 562, 581 (4th Cir.
2015)("[A]n employer will not be liable for failure to engage in
the interactive process if the employee ultimately fails to
demonstrate the existence of a reasonable accommodation that
would allow her to perform the essential functions of the
position."); Adkins, 137 A.3d at 226 ("[I]n a failure-to-
transfer case [under the Rehabilitation Act], if, after a full
opportunity for discovery, the summary judgment record is
insufficient to establish the existence of an appropriate
position into which the plaintiff could have been transferred,
summary judgment must be granted in favor of the defendant-even
if it also appears that the defendant failed to engage in good
faith in the interactive process." (quoting Donahue v. Consol.
Rail Corp., 224 F.3d 226, 233-34 (3d Cir. 2000))).


c. Qualified Individual

i. DDC Position

---

[13]    In addition, Best Buy contends that Wehner did not
adequately enter into an interactive process.
[14]    Meaning a job for which he was a "qualified individual" in
the sense it was an available job that "he desire[d] and c[ould]
perform with or without reasonable accommodation." Smith, 180
F.3d at 1161.

Wehner applied online for the DDC position and told Holland and Arias.  Holland and Arias did not have hiring authority for this position, but Holland contacted Barbara Hoffman, the Human Resources manager responsible for hiring for that position, and told her that Wehner had applied.  Hoffman informed Holland that the DDC job criteria specified that an Associate's Degree was required and a Bachelor's Degree was preferred, and that she would not be "pursuing" Wehner because he did not have the appropriate degree.[15]  Holland Dep. [ECF No. 34-5] at 98:13-15. Holland did not consider waiving the educational requirement for Wehner.  Wehner was not considered for this position because he did not possess a college degree.

Wehner claims that Best Buy's failure to consider whether a waiver of the degree requirement was reasonable in his case is a violation of Best Buy's duty to engage in an individualized assessment and interactive process.  However, Wehner must demonstrate that he was a qualified individual who could otherwise perform the essential functions of the DDC job.  "The term 'qualified,' with respect to an individual with a

---

[15]  The advertised "Basic Qualifications" for the DDC position were an "Associate Degree, must be at least 18 years of age, and one year of supervisory/management experience." DDC Supervisor Job Description [ECF No. 34-8] at 2. The "Preferred Qualifications" were a "Bachelor's Degree, 2 years Logistics Warehouse, Inventory and/or Distribution experience, 2 years Customer Service experience, [and] 2 years supervisory/management experience." Id.

disability, means that the individual satisfies the requisite skill, experience, education and other job-related requirements of the employment position such individual holds or desires and, with or without reasonable accommodation, can perform the essential functions of such position." 29 C.F.R. § 1630.2(m) (emphasis added).

The EEOC Interpretive Guidance on the ADA envisions a two-step process when determining whether an individual is "qualified," with the first step being an assessment of whether the individual satisfies the job's prerequisites, including education requirements.[16] See 29 C.F.R. Pt. 1630, App.  Other circuits follow this two-step approach.  See, e.g., Peters v. City of Mauston, 311 F.3d 835, 845 (7th Cir. 2002); Skerski v. Time Warner Cable Co., a Div. of Time Warner Entm't Co., L.P., 257 F.3d 273, 278 (3d Cir. 2001); Browning v. Liberty Mut. Ins. Co., 178 F.3d 1043, 1047 (8th Cir. 1999).  Under this approach, Wehner has failed to show he satisfied the DDC position's degree prerequisites at step one.

---

[16]    The second step inquires into whether the employee can perform the other essential duties of the job. Id.  In this case, Wehner offers his own opinion that he could perform the DDC position duties based on their similarities to his job as a GM. See Pl.'s Reply [ECF No. 39] at 9 n.7; Wehner Aff. [ECF No. 39-1] at ¶¶ 2-6.  While a plaintiff's subjective opinion that is not based on first-hand experience may not be sufficient in the face of contrary evidence, see Adkins, 137 A.3d at 231-32, Best Buy has failed to offer any evidence to dispute Wehner's contentions that he can perform the job's duties.

Furthermore, Wehner has failed to show that waiving a degree requirement is an accommodation that is "reasonable in the run of cases." Barnett, 535 U.S. at 403.  A non-discriminatory, neutral education requirement is the type of "barrier" that courts have been reluctant to say must be waived when accommodating an individual with a disability.  See Williams v. United Ins. Co. of Am., 253 F.3d 280, 282 (7th Cir. 2001)(holding employer not required to accommodate employee by "waiving his normal requirements for the job in question"); Jablonski v. Charles Levy Circulating Co., 919 F.Supp. 298, 300 (N.D. Ill. 1996)(rejecting plaintiff's argument that the job's high school degree requirement should not apply to her because she had the experience and education to perform the job).

When a plaintiff fails to show why a requirement or policy is not "reasonable," a plaintiff may still prevail under the Barnett framework by "showing that special circumstances warrant a finding that the accommodation is reasonable under the particular circumstances of the case." United States EEOC v. St. Joseph's Hosp., Inc., 842 F.3d 1333, 1346 (11th Cir. 2016) (quoting Shapiro v. Twp. of Lakewood, 292 F.3d 356, 361 (3d Cir. 2002)).

Wehner contends that his years of managerial experience replace the generic requirement of having an Associate's degree, especially when no particular major is required for the DDC job.

23

Wehner believes that, as an internal candidate, he did not necessarily have to meet all of the job requirements because he had "experience and time and tenure with the company." Wehner Dep. [ECF No. 34-2] at 72:17-22.  But, when asked, Wehner could not identify any other individuals or examples of a time when a job requirement was waived for an internal candidate.[17] Id. According to Arias, the degree requirements for Best Buy jobs are strictly applied and there are never exceptions. Arias Dep. [ECF No. 34-4] at 130:10-132:22.  Holland stated that a degree requirement was an "essential function" of a Best Buy job. Capeling Dep. [ECF No. 34-6] at 57:10-22.

However a reasonable jury could find that, in the context of the instant case, there was not essentiality to a degree. The record reveals that there is one person (out of approximately twenty) currently in the DDC position who may not have an Associate's Degree (records show she had "some college"), but Best Buy has testified that individual may have held the position before the degree requirement was put in place. Def.'s Resp. to Interrog. [ECF No. 34-9] at 11-12.  Other courts have held that inconsistently applied nondiscriminatory policies could preclude summary judgment or constitute special

---

[17]   In support, Wehner states he was selected over candidates with college degrees for the Business Manager position, but that position did not require a college degree, nor did the GM position. A college degree was only "preferred."

circumstances in cases like these.  See, e.g., Randle v. City of
Aurora, 69 F.3d 441, 453-54 (10th Cir. 1995)(denying summary
judgment on failure to promote claim because of genuine issue of
fact over the Associate's Degree requirement because employer
hired someone without degree into the position and permitted
experience to substitute for degree); United States v. Woody,
No. 3:16-CV-127, 2016 WL 6897787, at *10 (E.D. Va. Nov. 22,
2016)(pending on appeal)(noting that "dispute over the
consistency in application of a non-discriminatory hiring policy
could conceivably" lead to denial of summary judgment).

    Additionally, the regulations interpreting FEPA differ from
the ADA, suggesting a different obligation for Best Buy.  The
Maryland regulation states that a reasonable accommodation
includes

> [r]eanalyzing, with full consideration to the needs of
> the applicant or employee with a disability, job
> specifications, qualifications, or criteria to
> determine if they may be waived or modified.

Md. Code Regs. 14.03.02.05B(12)(emphasis added).  This
interpretation of FEPA seems to require a case-by-case
consideration of whether a particular job criteria can be
waived, which Best Buy did not do here.  Nor has Best Buy
alleged that the Associate's Degree requirement was a "bona fide
occupational qualification (BFOQ) reasonably necessary to the
normal operation" of its business.  Md. Code Regs. 14.03.02.04.

For the foregoing reasons, genuine issues of material fact exist regarding whether to make a reasonable accommodation, Best Buy would have been required to waive the Associate's Degree requirement, and whether Best Buy's failure to consider waiving the requirement violated its duty to conduct an individualized assessment.

### ii. District Services Manager

There was also, at the pertinent time, an open DSM position in District 95.[18]  Holland did not have authority to hire for that job, so Wehner had to apply for it himself in order to be considered.  Holland Dep. [ECF No. 34-5] at 88-89:4-7.  Best Buy argues that Wehner ended its obligation to accommodate him because he did not apply.

Wehner testified that he chose not to "inquire further" or apply for the District Services Manager position after talking with Arias because "it was obvious the position wouldn't be available to me."  Wehner Dep. [ECF No. 34-2] at 158:3-4. According to Wehner, the phone calls with Arias and Holland were

---

[18]    Wehner meets the basic requirements of the District Services Manager position: a High School Diploma, two years of profit and loss management, including budget responsibilities, and three years of retail management experience, and he testifies that the DSM job duties are sufficiently similar to his GM job duties and that he can perform them.[18] See [ECF No. 34-10] at 6 (listing DSM job requirements and duties); Wehner Dep. [ECF No. 34-2] at 155:9-10, 157:3-21.

"uncomfortable," "short, and "awkward." <u>Id.</u> at 158:7-8.  Wehner
stated,

> [W]e absolutely didn't explore any opportunities or
> have deeper discussions. The call lasted less than 20
> minutes. I kind of went through my health conditions.
> [Arias] was very candid about going through positions
> in the store. And only wanted the answers whether I
> could do the job or not do the job in the store.
> Anything beyond that, it was [Holland] that engaged
> and said she would look into it.

<u>Id.</u> at 158:13-20.  Nevertheless, Wehner contends that as part of
its individualized assessment duties, Best Buy should have
considered him for the reassignment, or Holland should have
contacted the supervisor in District 95 who shares the same
office space.  Wehner has put forth adequate evidence on his
ability to perform the essential functions of the DSM position
to survive summary judgment.[19]

Both the Maryland Court of Appeals and federal courts have
held that it is not always necessary for an employee with a
disability to submit a formal application to a specific position
as long as the employer has adequate notice that the employee
desires an accommodation.  <u>Cf. Adkins</u>, 119 A.3d at 146 (An
individualized assessment would include "considering the vacant
positions to which [an employee] applied or, alternatively,
another position available during the relevant time period in

---

[19]    As stated by Best Buy counsel at the hearing, Wehner
probably would have got the DSM job had he applied.

which [the employer] could have transferred [the employee].");
Gile v. United Airlines, Inc., 213 F.3d 365, 374 (7th Cir. 2000)
(employer could not refuse to reassign an employee to a day
shift just because she did not fulfill the "technical
requirement" of casting a bid for a day shift while she was on
medical leave).

Best Buy argues that an employer is not required to
reassign an employee to fill a vacancy over a more qualified
applicant, but that is not the situation presented here.  Best
Buy did not consider Wehner for the DSM position.  There are
questions of fact as to whether it would have been unreasonable
or an undue hardship for Holland to have reached beyond her
district to facilitate reassigning Wehner[20] or to consider him
without his formal application, when Holland and Arias were
already on notice that Wehner wanted the DSM position.
Moreover, Wehner states he was not required in the past to fill
out an application or interview for the Bel Air GM position. See
Wehner Dep. [ECF No. 34-2] at 28:18-29:1.

The Court concludes that there are genuine issues of
material fact regarding the District Services Manager position.
A reasonable jury could find that Wehner failed to fulfill his
role in the interactive process by not applying for the

---

[20]    Especially since Holland had already reached out to other
supervisors about the DDC and DFM positions.

position, since he obviously knew how to do so.  However, a
reasonable jury could alternatively find that Wehner's failure
was due to the alleged bad faith on the part of Best Buy.

### iii.  Unspecified Vacancies

Last, Wehner contends that Holland and Arias should have
attempted to accommodate him by reassigning him to other,
unspecified, vacant Best Buy positions in the region.[21]  For
example, Wehner points out that Best Buy has warehouses in
Elkridge, Maryland, and Philadelphia, which employ approximately
fifty people each.  Holland Dep. [ECF No. 34-5] at 117:17,
120:17.  Best Buy also has "project team" positions in Maryland,
and other DFM positions in southern Pennsylvania and New Jersey
that Wehner surmises may have been available.[22]  Holland did not
consider whether any of these positions were vacant or whether
Wehner would be suitable for these positions because they were
outside of her district and supervision.  Id. at 123:21-124:4.

It is the EEOC's position that an employer's obligation to
offer reassignment is not limited to vacancies within an

---

[21]   Wehner told Holland he was open to working in Pennsylvania,
Delaware, Maryland, and the metro-D.C. area.
[22]   Although Holland inquired about DFM jobs with Rick
Anderson, who supervised several districts in Maryland,
Delaware, northern Virginia, and Washington, DC, she did not
inquire with any DFM supervisors in southern Pennsylvania or
southern New Jersey, nor did she ask Mr. Anderson to contact
those supervisors to inquire whether any open positions existed.

employee's department, facility, personnel system, or geographical area, even if it is the employer's policy prohibiting such transfers.  See EEOC, Enforcement Guidance: Reasonable Accommodation And Undue Hardship Under The Americans With Disabilities Act, 2002 WL 31994335, at *22 (Oct. 17, 2002). An employer may have a defense that such transfers would cause undue hardship. Id.

Courts have recognized that the employer is in a far better position than the employee to identify vacant positions[23] that the employee may qualify for because of the employer's advanced capacity and resources.  See, e.g., Taylor, 184 F.3d at 316 (explaining that the employee does not have the burden of identifying open positions without the employer's assistance); Smith, 180 F.3d at 1173 ("[I]n larger companies or companies where the employee does not have ready access to information regarding available jobs, it might be reasonable to require the employer to identify jobs.").

Nevertheless, Wehner bears the burden of now showing that such a job was available at the relevant time and that he could have performed the essential functions of that job.

---

[23]  "The term 'vacant position' not only includes positions that are presently vacant, but also those that the employer reasonably anticipates 'will become vacant in a short period of time.'" Cravens, 214 F.3d at 1019 n.5 (quoting Monette v. Electronic Data Sys. Corp., 90 F.3d 1173, 1187 (6th Cir. 1996)).

> Crucially, "if, after an opportunity for discovery, the employee still has not identified a position into which she could have transferred, the court must grant summary judgment in favor of the defendant." Shapiro v. Twp. of Lakewood, 292 F.3d 356, 360 (3d Cir. 2002); Kotwica v. Rose Packing Co., Inc., 637 F.3d 744, 750 (7th Cir. 2011) ("plaintiffs, when alleging that an employer's failure to reassign them violated the ADA's anti-discrimination provisions, bear the burden of showing that there is a vacant position in existence for which they are qualified."); McBride v. BIC Consumer Prods. Mfg. Co., Inc., 583 F.3d 92, 97-98 (2d Cir. 2009) (plaintiff "must demonstrate the existence, at or around the time when accommodation was sought, of an existing vacant position to which she could have been reassigned."); Taylor v. Pepsi-Cola Co., 196 F.3d 1106, 1111 (10th Cir. 1999) ("To survive summary judgment, Plaintiff must establish that he was qualified to perform an appropriate vacant job which he must specifically identify and show was available within the company at or about the time he requested reassignment.").

Reyazuddin v. Montgomery Cty., Md., 7 F.Supp.3d 526, 550-51 (D. Md. 2014), aff'd in part, rev'd in part and remanded sub nom. Reyazuddin v. Montgomery Cty., Maryland, 789 F.3d 407 (4th Cir. 2015). Wehner has not specifically identified any other vacant positions available to him, so as a matter of law, he cannot show a prima facie case of failure to accommodate under the ADA on this specific ground.

It is arguable that a plaintiff may be able to pursue a claim under the Maryland FEPA for failure to conduct an individualized assessment (a separate unlawful employment practice), despite not showing the existence of a vacancy. See Adkins, 137 A.3d at 225 n.16 ("[Employer's] encouraging

[plaintiff] to apply for other positions via its website, however, does not satisfy its responsibility to conduct an individualized assessment to formulate an effective accommodation."). However, unlike in Adkins where the employer advised an employee to apply to vacant positions but failed to help the employee identify any vacancies, here, Best Buy's employees did more than simply refer Wehner to the career website. For example, Wehner had already identified vacant positions, and Holland investigated the DDC and DFM positions on Wehner's behalf. Therefore, Best Buy's failure to locate additional openings in the company does not, by itself, demonstrate that it violated FEPA as a matter of law, as a rational jury could find that Best Buy conducted an individualized assessment through its other actions. Nevertheless, evidence that Best Buy did not attempt to identify other open positions for Wehner could be relevant at trial on the overall question of whether Best Buy conducted an individualized assessment under FEPA.[24]

---

[24]   But this evidence cannot be used to show that Best Buy failed to reasonably accommodate Wehner.

IV.   <u>CONCLUSION</u>

For the foregoing reasons:

1. Defendant Best Buy's Motion for Summary Judgment [ECF No. 34] is GRANTED IN PART AND DENIED IN PART.

   a. All claims in Counts 1 and 2 of the Amended Complaint remain pending.

   b. All claims in Counts 3 and 4 of the Amended Complaint are dismissed.

2. Plaintiff Joseph Wehner's Cross-Motion for Summary Judgment [ECF No. 35] is DENIED.

3. Plaintiff shall arrange a telephone conference to be held by March 24, 2017, regarding the scheduling of further proceedings and trial.

SO ORDERED, this <u>Friday, March 10, 2017</u>.


                              _____/s/_____
                               Marvin J. Garbis
                          United States District Judge

33